UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

MICHAEL RANSBOTTOM                              No. 19-1

       Plaintiff,

vs

CITY OF OTSEGO, MICHIGAN, a municipal corporation.

       Defendant.

_____/

## VERIFIED COMPLAINT FOR DECLARATORY, INJUNCTIVE AND OTHER RELIEF

Plaintiff Michael Ransbottom brings this Verified Complaint for Declaratory and Injunctive Relief and other relief against Defendant City of Otsego, Michigan (hereinafter "Otsego" or "the City") and states as follows:

### INTRODUCTION

1.    Plaintiff files this 42 U.S.C. § 1983 action to challenge the constitutionality of three provisions of the Otsego sign ordinance: (1) the provision prohibiting homeowners from placing more than one political signs per issue or candidate in their yards; (2) the provision limiting the size of each political sign to six feet square, and; (3) the provision which conditions the exemption from the sign permit requirement to compliance with the latter two provisions.

2. Plaintiff asserts that these provisions violate the guarantees of freedom of speech and equal protection of the laws under the First Amendment and Fourteenth to the U.S. Constitution.  Plaintiff seeks a declaration that the ordinance is unconstitutional, a temporary restraining order, an injunction enjoining its enforcement and other relief.

## PARTIES, JURISDICTION AND VENUE

3.      Plaintiff Michael Ransbottom ("Ransbottom") is a resident of Otsego.

4.      Otsego is a municipal corporation organized in and existing under the Constitution and laws of the State of Michigan.

5.      Jurisdiction is proper under 28 U.S.C. §§1331and 1343, because federal questions are presented in this action under the United States Constitution and 42 U.S.C.§ 1983.

6.      Venue is proper under 28 U.S.C. §139l (b)(l) and (2) because this is the judicial  district where Defendant resides and where a substantial part of the events or omissions giving rise to the claims occurred or will occur.

## GENERAL ALLEGATIONS

7.      The Zoning Ordinance of Otsego City Code contains one chapter regulating signs: Chapter 18.  Ex. 1.

8.      Section 18.3(A) states, "A sign not expressly permitted by this Ordinance is prohibited."   Political signs are defined as "Signs or posters concerning a political issue or candidate for political office."  Sec. 18.2 (H).

9.      Section 18.6 states the following restrictions regarding political signs in residential districts:

**Political signs**

| | |
|---|---|
| Number | 1 per issue or candidate |
| Size | No greater than 6 sq. ft. |
| Location | Minimum of 15 ft. from any side or rear property line |
| Height | No higher than 6 ft. |

10.     Ransbottom owns a home in a residential district of the City of Otsego.

11.     Around the first week in September of 2018, Ransbottom placed a sign in the front yard of his home stating, "IMPEACH TRUMP 2018."   About two weeks later, someone stole the sign.  Ransbottom went to the Otsego police station to report the larceny of the sign.  Ransbottom reported that he believed a man in his early twenties had stolen the sign, because that man had been driving by

Ransbottom's home repeatedly yelling insulting epithets at him.  The officer made a written report but orally stated that the police were probably not going to catch the perpetrator, because they could not identify him.

12.     Ransbottom immediately replaced the sign with two other signs: one stating "RESIST" and the other stating "IMPEACH TRUMP."  About a week later, one of those signs was stolen.  Ransbottom called the police who came out but made no written report.  The officer stated that the police were probably not going to catch the perpetrator, because they could not identify him.

13.     Thereafter, the man who had been driving by Ransbottom's home and insulting him yelled at Ransbottom that he (the man hurling insults) was a "NAZI." Ransbottom then placed in his yard two "IMPEACH TRUMP" signs one of which stated on the bottom "NAZIS NOT WELCOME."  The next weekend, the two "IMPEACH TRUMP" signs were stolen.  Ransbottom called the police and an officer came out, but made no written report.  The officer stated that the police were probably not going to catch the perpetrator, because they could not identify him.  During the end of September, the Otsego Chief of Police came to Ransbottom's home just to talk about Ransbottom's difficulties with the theft of his political signs.  The Chief told Ransbottom that, when he put up signs like his and when somebody gets emotionally charged, Ransbottom will make himself a target for someone who feels opposite to him.   The Chief did not suggest to

4

Ransbottom that his signs violated any City ordinance or other law.  The Chief did not ask Ransbottom to remove the signs.

14.     Soon after that last signs were stolen, Ransbottom placed video cameras in his yard in an attempt to identify the thief who was stealing his signs. Thereafter, the drive-by insults from the young man stopped.  Soon after, Ranbottom obtained a video recording of a man approaching the signs in his yard at night on foot, apparently seeing the cameras, and immediately leaving.

15.     On September 28, 2018, the very next day after Ransbottom captured the man on the video recording, the Otsego Chief of Police came to Ransbottom's home to advise him that someone had made an "anonymous complaint" to "city hall" (not to the police) about Ransbottom's political signs.  The Chief told Ransbottom that he (Ransbottom) was not entitled to know the identity of the person who complained.

16.     On September 28, 2018, the signs in Ransbottom's front yard consisted of:  (1) the sign stating "IMPEACH TRUMP" and "NAZIS NOT WELCOME"; (2) the sign stating "IMPEACH TRUMP"; (3) the sign stating "REPEAL AND REPLACE" with a silhouette of Donald Trump, and; (4) a sign stating "RESIST."  Photographs of signs, Ex. 2.

17.     The Chief of Police told Ransbottom that his signs violated the City's sign ordinance Section 18.6, because (1) the sign stating "IMPEACH TRUMP"

and "NAZIS NOT WELCOME" violated the size restriction of the ordinance that limited political signs in residential district to six square feet[1], and, (2) his signs violated the ordinance's limitation of one sign per issue or candidate because they all were directed to removing President Trump from office.

18.    The Chief told Ransbottom that he would give him a day or so to think about removing his signs, before issuing a citation.  Ransbottom said he did not need time to think about it, because he was standing on his constitutional right to freedom of speech and would not remove the signs.

19.    The Chief suggested that Ransbottom talk to the City Manager. Ransbottom went to the city hall to discuss the matter with the City Manager.   The Manager told Ransbottom that, unless he immediately removed the signs, he would receive a civil infraction for violating the sign ordinance.  Ransbottom told the Manager the threatened ticket was "bullshit."  The Manager threatened to have Ransbottom arrested for "swearing."  Then, the Chief came and gave Ransbottom a civil infraction for violation of the City's sign ordinance.  Civil Infraction Ticket, Ex. 3.

20.    The four signs present on September 28, 2018, have remained in place on Ransbottom's front lawn until the present time.

---

[1] The Chief estimated its size at 3 feet by 4 feet.

21.    The State of Michigan's 57th District Court has scheduled a trial on the civil infraction for 10:00 a.m. on January 10, 2019.  Notice of Trial, Ex. 4.  If found guilty of the civil infraction, Ranbottom will be subject to a civil fine plus any costs, damages, expenses, and other sanctions.   The City may consider each day the signs have remained on Ransbottom's yard a separate civil infraction that carries a separate fine.  Increased civil fines will be imposed for repeated violations that occur within a six month period.   The City may also seek equitable relief to abate a violation of the sign ordinance.  The Zoning Administrator may cause the sign to be removed and assess the costs of removal against the owner or as a lien upon the property.   Zoning Ordinance, Section 18.3(5), Ex. 1; Section 19.6(E), Ex. 5.  The Chief of Police has told Ransbottom that if the court finds in the City's favor, the City will remove Ransbottom's signs.

22.    The Otsego Zoning Ordinance defines "sign" as:

Sign. Any object or device (or part thereof) which is used to advertise, identify, display, or direct or attract attention to an object, person, institution, messages, issue, organization, business, product, service, event, or location by any means, including words, letters, figures, designs, symbols, fixtures, colors, motion, illumination or projected images and which is visible from a public right-of-way or public waterway.

Sec. 18.2(N).

23.    Unless exempt from permit requirements, no sign may be placed on property unless the Building inspector issues a permit after the

property owner submits an application, plans and specifications for the sign, and an application fee.  Political signs are exempt from this permit requirement but only if, (1) the signs do not exceed six square feet in area, (2) do not exceed one sign per candidate or issue per parcel of property and (3) are not placed in and do not overhang a public right-of-way.  Sec. 18.4(A), (B)(8).  Thus, under the latter sections, even if Ransbottoms signs were not barred under Section 18.6 of the sign ordinance, Ransbottom would have to obtain a permit to place his political signs in his yard.

24.    The restrictions for permitted signs vary according to the zoning classification of the location where the signs are placed.  There are different rules for signs on Residential Districts; CBD, C-1, MPUD Districts; PO Districts, and; G-I, IPUD Districts.   Sec. 18.6.

25.    Within each district category, the rules for permitted signs depend upon the content of the signs.  For instance, within the Residential District category, the rules are different for identification signs, wall signs for home occupations, wall signs for non-residential uses, political signs, and real estate signs.  Each district category has rules for political signs, and the rules vary depending upon within which district category the sign is located.

26.    Political signs in commercial districts (CBD, C-1, MPUD Districts), professional office districts (PO Districts), general industrial districts (G-I, IPUD

Districts) and may be up to 32 square feet in size. But in residential districts, a political sign can only be up to six square feet. Sec. 18.6.

27. Within a residential district, an identification sign may be up to 32 square feet in size and real estate signs may be up to 16 square feet in size for vacant lots or parcels over one acre. But political signs may not exceed six square feet.

28. In a residential district, a homeowner may place one wall sign for non-residential uses on each street frontage of the property. If the property has frontage on more than one street, the homeowner may place more than one such sign on his property. The homeowner is not limited to one sign on the property per message on the sign.

29. In a residential district, a homeowner may place one real estate sign on each street frontage of the property. If the property has frontage on more than one street, the homeowner may place more than one such sign on his property. The homeowner is not limited to one sign on the property per message on the sign.

30. Ransbottom's home is on a corner lot. He has two street frontages to his residence. Yet, under the City's sign ordinance he cannot place one sign concerning a political issue on the frontage of one street and another concerning the same political issue on the other street frontage.

31.    Ransbottom's home is on a corner lot.  He has two street frontages to his residence.  Yet, under the City's sign ordinance he cannot place one sign concerning a political candidate on the frontage of one street and another concerning the same political candidate on the other street frontage.

32.    Under Otsego's sign ordinances, a homeowner may place numerous signs of different types in his yard at any one time.  Such signs can consist of at least one each of the following signs: an identification sign, a wall sign for home occupations, a wall sign for non-residential uses, a political sign, and a real estate sign.  But if the same homeowner has more than one political sign per issue or candidate, he or she in violation of the sign ordinance.  Sec. 18.6, "Residential Districts-Permitted Signs."

33.    If the prohibition against posting more than one political sign per issue or candidate is enjoined, the City will be barred from proceeding against Ranbottom in the trial in 57th District Court on the civil infraction and will be barred from removing Ransbottom's existing political signs.

34.    If the prohibition against homeowners placing political signs over six square feet in size on their property is enjoined, the City will be barred from proceeding against Ranbottom in the trial in 57th District Court on the civil infraction and will be barred from removing Ransbottom's existing political signs.

35.     In elections held subsequent to the November 6, 2018 election, Ransbottom will post multiple signs in support of each of his favorite candidates and issues if, and only if, Otsego's limitation on numbers of political signs is enjoined.

36.     In elections held subsequent to the November 6, 2018 election, Ransbottom will post political signs in excess of six square feet in size if, and only if, Otsego's limitation on the size of political signs is enjoined.

**COUNT I**
**THE ONE SIGN PER ISSUE OR CANDIDATE POLITICAL SIGNS LIMIT**

37.     Plaintiff re-alleges and incorporates by reference the allegations contained in the previous paragraphs as though fully set forth herein.

38.     Section 18.6 of Otsego's zoning ordinance contains various restrictions on political signs depending on the property district classifications in Section 18.6.  Each property classification has its own sub-section regarding political signs.  Section 18.4(A) and (B) of Otsego's zoning ordinance contain a general requirement for obtaining a permit for signs and several exemptions to the permit requirement.   Sections 18.4 (B)(8) provides the terms of the permit exemption for political signs.  Together, Sections 18.4(A), (B)(8) and the restrictions on political signs within each property classification of Section 18.6 comprise Otsego's political sign ordinances (hereafter "*political sign ordinances*.") The provisions of Section 18.6 which address political signs in residential districts

and the corresponding provisions of Section 18.4(B) regarding the permit exemption for political signs, are Otsego's residential district political sign ordinance (hereafter "*residential district political sign ordinance*.")

39.     Section 18.6 of Otsego's residential district political sign ordinance, which prohibits a homeowner from placing more than one political sign per issue or candidate on his property at a time, is not content neutral.

40.     Section 18.4(A), (B)(8) of Otsego's political sign ordinance, which requires a homeowner from placing more than one political sign per issue or candidate on his property without obtaining a permit and paying a permit fee, are not content neutral.

41.     Section 18.6 and 18.4(A), (B)(8) of Otsego's political sign ordinance do not advance a compelling state interest.

42.     Section 18.6 and 18.4(A), (B)(8) of Otsego's political sign ordinance are not narrowly tailored to further a substantial state interest.

43.     Section 18.6 and 18.4(A), (B)(8) of Otsego's political sign ordinance do not leave open ample alternative channels for communication of information.

44.     Therefore, Section 18.6 and 18.4(A), (B)(8) of Otsego's political sign ordinance violate the First Amendment of the Constitution of the United States.

45.     Absent injunctive relief, Plaintiff and others will be hindered and chilled from exercising their protected free speech and associational rights.

46.     There is not an adequate remedy at law.

## COUNT II
## THE SIZE LIMIT FOR POLITICAL SIGNS

47.     Plaintiff re-alleges and incorporates by reference the allegations contained in the previous paragraphs as though fully set forth herein.

48.     Section 18.6 of Otsego's residential district political sign ordinance, which prohibits a homeowner from placing a political sign more than six square feet in size on his property, is not content neutral.

49.     Section 18.4(A), (B)(8) of Otsego's residential district political sign ordinance, which requires a homeowner from placing political sign over six square feet in size on his property without obtaining a permit and paying a permit fee, are not content neutral.

50.     Section 18.6 and 18.4(A), (B)(8) of Otsego's residential district political sign ordinance do not advance a compelling state interest.

51.     Section 18.6 and 18.4(A), (B)(8) of Otsego's residential district political sign ordinance are not narrowly tailored to further a substantial state interest.

52.     Section 18.6 and 18.4(A), (B)(8) of Otsego's residential district political sign ordinance do not leave open ample alternative channels for communication of information.

53.     Property owners in residential districts and property owners in commercial districts, professional office districts, and general industrial districts are similarly situated with regard their right to freedom of speech under the First Amendment of the of the Constitution of the United States.

54.     The government may not suppress political speech on the basis of individual or commercial identity.

55.     Section 18.6 and 18.4(A), (B)(8) of Otsego's political sign ordinance allow a business owner of commercial, professional office, or general industrial property to place on the owner's property political signs up to 32 square feet in size without obtaining a permit or paying a permit fee.

56.     But Section 18.6 and 18.4(A), (B)(8) of Otsego's political sign ordinance restrict an owner of residential property to political signs only up to six square feet.   If an owner of residential property places on his or her property a political sign of over six square feet, he or she not only is in violation of Section 18.6 (Permitted Signs) but also is disqualified from an exemption from obtaining a permit or paying a permit fee.

57.     The different treatment to residential property owners, on one hand, and to commercial, professional office, and general industrial property owners, on the other hand, afforded by Section 18.6 and 18.4(A), (B)(8) of Otsego's political sign ordinance,  is not rationally related to a legitimate government purpose.

58.     Section 18.6 and 18.4(A), (B)(8) of Otsego's political sign ordinance affect rights protected under the First Amendment.  Therefore, strict scrutiny is applied because the ordinances implicate a constitutionally protected fundamental right, the right to freedom of speech.

59.     The different treatment to residential property owners, on one hand, and to commercial, professional office, and general industrial property owners, on the other hand, afforded by Section 18.6 and 18.4(A), (B)(8) of Otsego's political sign ordinance,  does not advance a compelling interest that is served by the distinctions between speakers in these provisions.

60.     The above-noted distinctions made by Section 18.6 and 18.4(A), (B)(8) of Otsego's political sign ordinance are not the least restrictive means for serving any purported interests.

61.     Therefore, Section 18.6 and 18.4(A), (B)(8) of Otsego's political sign ordinance violate (1) the protections for free speech under the First Amendment and Fourteenth Amendment of the Constitution of the United States and, (2) the provisions for equal protection of the laws under the Fourteenth Amendment of the Constitution of the United States.

62.     Absent injunctive relief, Plaintiff and others will be hindered and chilled from exercising their protected free speech and associational rights.

63.     There is not an adequate remedy at law.

15

**RELIEF REQUESTED:**

Plaintiff requests that this Honorable Court:

a.      declare the provisions about number of permitted political signs and the size of those signs within Section 18.6 and 18.4 (B)(8) of the Otsego *residential district political sign ordinance* unconstitutional on the grounds set forth above;

b.      issue a temporary restraining order, preliminary injunction and a permanent injunction enjoining Otsego from enforcing or threatening to enforce Section 18.6 and 18.4 (B)(8) of the Otsego *residential district political sign ordinance*;

c.      award Plaintiff nominal damages for the violation of his constitutional rights;

d.      award Plaintiff costs and attorney's fees incurred in this lawsuit pursuant to 42 U.S.C. §1988; and

e.      grant such other and further relief as shall be just and proper.


Respectfully submitted,

By /s/ Robert L. Levi
Robert L. Levi
Robert L. Levi, P.C.
6675 Edwood Ave.
West Bloomfield, MI 48324
robert@robertlevilaw.com
248-366-4412
State of Michigan Bar No. 42598

Date: January 2, 2019

## **DECLARATION**

I declare under penalty of perjury that the foregoing Verified Complaint for Declaratory, Injunctive and Other Relief is true and correct.

Executed on January 1, 2019.


_____

Michael Ransbottom